## ITALY COTTON OIL CO. v. SOUTHERN COTTON OIL CO. (No. 738.)

Court of Civil Appeals of Texas. Waco. Jan. 17, 1929.

Rehearing Denied Feb. 14, 1929.

Wear, Stollenwerck & Wear and Frazier & Averitte, all of Hillsboro, for appellant.

J. L. Gammon, of Waxahachie, and Baker, Botts, Parker & Garwood, of Houston, for appellee.

BARCUS, J. Defendant in error, hereinafter called Southern Company, instituted this suit against plaintiff in error, hereinafter called Italy Company, to recover damages which it claims to have suffered by reason of the failure of Italy Company to deliver one tank of prime crude cotton-seed oil at the price of $1.03 per gallon f. o. b. Texas common points. It alleged that it purchased said oil at said price in June, 1917, for December, 1917, delivery, and that Italy Company failed and refused to fill said contract and it was required to and did purchase said oil at the best price obtainable, to wit, $1.31¼ per gallon. It claimed to have been damaged the difference in the price at which it had bought said oil and the price it was required to pay to obtain same.

The Italy Company interpleaded C. H. Bencini, and alleged that it had purchased from him the tank of oil at 93 cents a gallon, and that he had agreed to fill the contract it had made with the Southern Company, but had failed and refused to carry out said contract, and by reason thereof it was entitled to judgment against said Bencini for the difference between 93 cents per gallon, the price at which it had purchased said oil, and $1.31¼ per gallon, the price which Southern Company had been compelled to pay in order to obtain same. Italy Company also asked for judgment over against Southern Company for $800 damages, which it claimed it had suffered by reason of the failure of Southern Company to carry out its terms of purchase with it at $1.03 per gallon for said oil, alleging that it had lost the difference between the price at which it had purchased the oil, 93 cents a gallon, and the $1.03 a gallon, the price at which it had sold same to Southern Company. Bencini answered by general demurrer and general denial. Italy Company, as a special defense against the claim of Southern Company, alleged that it was a foreign corporation without a permit to do business in Texas, and that it was engaged in intrastate business, and by reason thereof it was not entitled to prosecute the

suit in the Texas courts. It further alleged that Southern Company had breached its contract of purchase of said oil, in that it had failed and refused to furnish the car in which said oil could be shipped within the time provided in said contract.

The cause was tried to the court, and resulted in judgment being rendered for Southern Company against Italy Company for $2,260, the difference between $1.03 per gallon, the price at which it had purchased the oil, and $1.31¼ per gallon, the price it had paid for the same; and judgment in favor of Italy Company against Bencini for $3,060, being the difference in the price, to wit, 93 cents per gallon, at which it had purchased the oil from him, and the amount that Southern Company was required to pay in order to obtain same. Italy Company alone appeals.

■ Italy Company in its brief presents only four propositions. By the first two it contends that Southern Company could not maintain this suit and the judgment of the trial court should be reversed, because defendant in error was a foreign corporation transacting and soliciting business in Texas without any permit. We overrule these propositions. The facts surrounding the contract in controversy are practically without dispute. It appears that Southern Company is a foreign corporation, with a number of manufacturing plants at different points in the United States, all outside of Texas, and is a user of large quantities of cotton-seed oil. From time to time, through different brokers in Texas, it purchased cotton-seed oil for shipment and delivery to it at one or more of its manufacturing plants. It also at different times, through brokers in Texas, sold some of the cotton-seed oil which it had purchased. The tank of oil in controversy was purchased by Southern Company through a broker at Dallas on June 15, 1917, from Italy Company, for December shipment. The contract of purchase and sale, which was in writing, provided that it was subject to the rules and regulations of Texas Cotton-Seed Crushers' Association, and that the seller should pay the brokerage commission and the buyer should furnish a tank car for and give the seller shipping directions. The Southern Company, a foreign corporation, as well as Italy Company, a domestic corporation, were members of what is known as Texas Cotton-Seed Crushers' Association, and the purchase and sale of cotton-seed oil was made to and with members of said association under the terms, rules, and regulations of said association. Under the rules of the Texas Cotton-Seed Crushers' Association, it was provided that when the buyer was to furnish tank cars, he should forward same in such time that under ordinary course of transportation they would reach the place where they were to be loaded by the seller before the expiration of the contract time, but the buyer was not held responsible for railroad delays. Said rule further provided that it was the duty of the seller to notify the buyer at least ten days previous to the expiration of the period in which tank cars might be forwarded in time to reach the seller in time to admit of shipment within the contract period, and provided that, if the seller did not give such instructions, the buyer should ask therefor.

On December 4th, Southern Company wrote Italy Company for instructions as to where to send the empty tank car for reception of the oil. In reply thereto, the Italy Company answered that it had bought the oil from C. H. Bencini of Fort Worth, who would fill the contract, and at the same time wrote Bencini, asking him to give Southern Company instructions where to send the empty tank. On December 11th Southern Company wrote Bencini that Italy Company had informed it that he would furnish the tank of oil, and asked him to advise when and where to send the tank. On December 17th, Southern Company, not having heard from Bencini, wired him for instructions where to send the empty tank for loading, and in reply to said telegram, on December 17th, Bencini wired Southern Company to send tank to Hico, Tex. Southern Company had sold the tank of oil in controversy to Proctor & Gamble of Ivorydale, a suburb of Cincinnati, Ohio, and it notified them to send the empty tank to Hico for said oil. Proctor & Gamble, on December 22d, sent from Cincinnati, Ohio, an empty tank car to Hico, and same reached Hico on January 8th. The railroad officials testified that, if the car had moved in the usual and customary manner, it should have reached Hico within five or six days from the time it left Cincinnati; that the delay in transit was occasioned by reason of congestion caused by the movement of army supplies. Bencini refused to load the tank because it had not reached Hico before January 1st, and Southern Company, in order to fill its contract with Proctor & Gamble, purchased through a broker in Texas a tank of oil at $1.31¼ per gallon with which to fill said order. Southern Company was a foreign corporation with its home office in New York. It did not maintain any office in Texas, neither did it have any agent in Texas. The oil it purchased or sold was through general brokers, who had no authority to bind it. All the contracts made by the brokers in Texas were subject to approval by the corporation at its home office. We do not think this constituted intrastate business on the part of Southern Company. Clearly, the transaction involved in this litigation does not constitute intrastate business. It seems to be the settled holdings of our courts that a foreign corporation who buys or sells commodities in Texas through a broker for interstate shipment is not thereby transacting such business within the state as to require it to obtain a permit to do business in Texas before it can enforce the contract so made. Miller v. Good-

man, 91 Tex. 41, 40 S. W. 718; Allen v. Tyson-Jones Buggy Co., 91 Tex. 22, 40 S. W. 393, 714; Southern Discount Co. v. Rose (Tex. Com. App.) 296 S. W. 482; John A. Dickson Pub. Co. v. Bryan (Tex. Com. App.) 5 S.W.(2d) 980; Falls Rubber Co. v. La Fon (Tex. Com. App.) 256 S. W. 577.

By its third and fourth propositions, Italy Company contends that Southern Company first breached said contract, and was not therefore entitled to enforce specific performance or to recover damages for the breach thereof by Italy Company. We overrule these propositions. The trial court found —and said findings are amply supported by the testimony—that Southern Company did not breach its part of the contract, and further found specifically that it in all respects complied therewith. The trial court found that Italy Company breached its part of the contract and refused to comply therewith. Under the testimony as a whole, some of the material portions thereof being stated above and which need not be restated, we think the trial court was justified in its findings of fact that Southern Company complied with its part of the contract and that Italy Company breached its part.

The judgment of the trial court is in all things affirmed.